

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
06/20/2018

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **LORETTA DECLOUTTE** | § | **CASE NO. 14-35557** |
| | § | **CHAPTER 13** |
| Debtor. | § | |
| | § | |
| IN RE: | § | |
| | § | |
| **KELLEY LAVONE AUSTIN and** | § | **CASE NO. 12-35092** |
| **RAYON L. AUSTIN,** | § | **CHAPTER 13** |
| | § | |
| Debtors. | § | |
| | § | |
| **LORETTA  DECLOUTTE** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 16-3275** |
| | § | |
| **KELLEY AUSTIN** | § | |
| | § | |
| Defendant. | § | |
| | § | |
| **LORETTA DECLOUTTE** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 17-3237** |
| | § | |
| **KELLEY LAVONE AUSTIN,** | § | |
| | § | |
| Defendant. | § | |

## OPINION

Docket Nos. 152 and 153, Case No. 14-35557
Docket Nos. 1 and 20, Adversary No. 16-3275
Docket No. 1, Adversary No. 17-3237

In these proceedings, the Court must unfortunately address the applicable standard of conduct required of an attorney representing a debtor in a bankruptcy case.  The evidence presented over the course of several days of trial establishes that Kelley Austin intentionally used

her position as counsel for Loretta Decloutte to take advantage of Ms. Decloutte and then conceal her actions from the Court. Not only did Ms. Austin misappropriate estate property and file false statements before this Court, she facilitated criminal charges against Ms. Decloutte based on knowingly false facts in a concerted effort to silence her voice. Ms. Austin further failed to comply with court instructions regarding discovery in an effort to obfuscate the truth.

The Court has never before seen the level of misconduct present in this case. Ms. Austin's actions are an unacceptable affront to a properly functioning bankruptcy system. While the Court cannot undo what has been done, it will attempt to restore public confidence in the bankruptcy system and the legal profession in the Southern District of Texas as well as to compensate the victim of Ms. Austin's actions. Accordingly, the Court will grant relief as set forth below. In addition, the Court will set a hearing for Ms. Austin to appear and show cause why she should be allowed to continue to practice before the undersigned judge. In addition, the Court will refer this matter to the Chief District Judge for the Southern District of Texas for further disciplinary proceedings, including but not limited to disbarment, in accordance with the Rules of Discipline of the United States District Court for the Southern District of Texas. In addition, a copy of this opinion and associated judgment will be delivered to the Office of Chief Disciplinary Counsel for the State Bar of Texas, the Fort Bend County District Attorney's Office and the bankruptcy judges of this District. A separate judgment consistent with this opinion will issue.

## **Factual Background**

### **Bankruptcy Filing by Loretta Decloutte**

Ms. Decloutte filed a chapter 13 case on October 6, 2014 [Docket No. 1, Case No. 14-35557]. Ms. Austin signed the bankruptcy petition as Ms. Decloutte's attorney [Docket No.1, Case No. 14-35557]. In her disclosure of compensation filed October 20, 2014, Ms. Austin reflected that she agreed to handle all aspects of Ms. Decloutte's bankruptcy case in exchange for $3,500 [Docket No. 8, Case No. 14-35557]. Ms. Austin further disclosed that she had received $1,000 prior to the filing of the disclosure [Docket No. 8, Case No. 14-35557].

On October 20, 2014, Ms. Austin filed Ms. Decloutte's schedules [Docket No. 10, Case No. 14-35557]. Ms. Decloutte's Schedule A reflects no deposits or other assets held by Ms. Austin [Docket No. 10, Case No. 14-35557]. Schedule F reflects a debt in favor of Ms. Austin in the amount of $2,500 incurred on the petition date of October 6, 2014 [Docket No. 10, Case No. 14-35557]. This amount represents the unpaid balance of the $3,500 bankruptcy fee referenced in Docket No. 8, Case No. 14-35557. Ms. Decloutte's statement of financial affairs reflects that no payments were made to Ms. Austin within the two years preceding the bankruptcy case [Docket No. 12, Case No. 14-35557]. The statement of financial affairs further reflects that on the petition date, Ms. Decloutte was a party to a pending divorce action in Cause No. 12-DCV-201744, pending in the 387th Judicial District Court of Fort Bend County, Texas. [Docket No. 12, Case No. 14-35557].

On October 22, 2014, Ms. Austin filed her application to approve a fixed-fee agreement for her representation of Ms. Decloutte in the bankruptcy case [Docket No. 16, Case No. 14-35557]. The application sets a fixed fee of $3,500 for certain enumerated services [Docket No. 16, Case No. 14-35557]. Uncovered services such as representing Ms. Decloutte in an adversary proceeding or an uncovered contested matter were compensable at an hourly rate of $100 [Docket Entry No. 16, Case No. 14-35557]. The fixed-fee agreement was approved by order entered October 23, 2014 [Docket No. 17, Case No. 14-35557].

On January 14, 2015, Ms. Austin filed an amended Schedule B on Ms. Decloutte's behalf disclosing for the first time "proceeds from an unsettled personal injury case" [Docket No. 32, Case No. 14-35557]. No reference exists to any funds or other property held by Ms. Austin.

On March 4, 2016, Ms. Austin filed a motion on Ms. Decloutte's behalf to lift the automatic stay to allow the divorce proceeding to proceed [Docket No. 74, Case No. 14-35557]. At Ms. Decloutte's request and due to the prior assignment of her ex-spouse's bankruptcy case to the undersigned judge, her bankruptcy case was transferred to the undersigned judge by order entered March 31, 2016 [Docket No. 78, Case No. 14-35557]. The motion for relief was granted in part by order entered April 26, 2016 [Docket No. 86, Case No. 14-35557].

The Court confirmed Ms. Decloutte's chapter 13 plan by order entered July 30, 2015. [Docket No. 71, Case No. 14-35557].

On September 13, 2016, Ms. Austin filed a fee application for services for the period from March 1, 2016 through May 31, 2016 [Docket No. 113, Case No. 14-35557]. The application was amended on September 14, 2016 [Docket No. 114, Case No. 14-35557]. In the amended application, Ms. Austin sought total compensation of $1,012.00 for services related to a proof of claim [Docket No. 114, Case No. 14-35557]. The hourly rate charged by Ms. Austin was $100 in accordance with the fixed fee agreement [Docket No. 114, Case No. 14-35557]. Ms. Austin's time submissions do not reflect the existence of any other non-bankruptcy matters [Docket No. 114, Case No. 14-35557].

Ms. Decloutte retained a new attorney and objected to Ms. Austin's requested compensation on October 17, 2016 [Docket No. 119, Case No. 14-35557]. In the objection, Ms. Decloutte asserted that Ms. Austin's application failed to address any of the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) [Docket No. 119, Case No. 14-35557]. The Court scheduled a hearing to consider the application for December 19, 2016.

Ms. Decloutte also filed a motion to substitute counsel for Ms. Austin in her bankruptcy case on October 17, 2016 [Docket No. 120, Case No. 14-35557]. As a basis for the substitution, Ms. Decloutte stated that "[d]ue to a conflict arising from Austin's representation of her case, Decloutte terminated representation with Austin on or about September 24, 2016" [Docket No. 120, Case No. 14-35557]. In her response filed November 7, 2016, Ms. Austin did not oppose the requested substitution but stated that "[t]he alleged conflict does not now nor has it ever existed" [Docket No. 123, Case No. 14-35557]. This statement was false when made as evidenced below.

Ms. Austin was withdrawn as counsel for Ms. Decloutte by order entered December 6, 2016 [Docket No. 125, Case No. 14-35557].

Six days later on December 12, 2016, Ms. Austin filed a "Bankruptcy Rule 2016(b) Disclosure" setting forth the following statements:

2.   Debtor's spouse filed an Original Petition for Divorce in the 387th District Court of Fort Bend County, Texas under Cause No. 12-DCV-201744 entitled *In the Matter of the Marriage of Ernest LaFleur, Jr. and Loretta DeCloutte and in the interest of Torrie E. Lafleur, Trenton E. Lafleur and Tierra E. Lafleur.*

3.   Kelley Austin was retained to represent the Debtor in the above referenced divorce action.

4.   The Debtor's divorce case was finalized on or about August 29, 2016 pursuant to a mediated settlement agreement (hereinafter "MSA"). Pursuant to that agreement, Debtor's spouse was to pay her $10,000.00 to equalize their property division. The payment was to be made through the parties respective attorneys.

5.   Following the conclusion of the divorce action, the Debtor had outstanding attorneys fees.

6.   On or about July 19, 2016, pursuant to the MSA, attorney collected a Bank of America cashier's check in the amount of $10,000.00 and deposited it into attorney's Chase Bank account.

7.   On or about August 5, 2016, attorney disbursed to Debtor $2675.00 from the $10,000.00 with the remaining $7325.00 being credited towards attorneys outstanding fees. Debtor signed an acknowledgment of receipt of the same.

8.   On or about October 13, 2016, an affidavit was filed with Bank of America alleging that the cashiers check had been fraudulently endorsed and that the Debtor had not received any funds from said cashiers check.

9.   On or about November 28, 2016, attorney received correspondence from Chase bank that the cashiers check had been returned and that the monies had been debited from attorneys account.

10.     As of the date of the filing of this disclosure, Debtor has received funds from the $10,000.00 Bank of America cashiers check along with the $2675.00 that attorney disbursed to her on August 5, 2016.

[Docket No. 128, Case No. 14-35557] (typographical errors included).  The foregoing disclosure and subsequent events discussed below are extremely disturbing on a number of levels, including but not limited to (i) the failure to seek approval of the "settlement" in accordance with Bankruptcy Rule 9019; (ii) Ms. Austin's failure to seek court approval of her retention as family law counsel; (iii) multiple violations of the automatic stay; (iv) the potential fraudulent misappropriation of property in violation of 18 U.S.C. § 153, including the fraudulent endorsement of a check; (v) the potential fraudulent concealment of estate property in violation of 18 U.S.C. § 152; (vi) the potential fraudulent receipt of property from a debtor with the intent to defeat the provisions of title 11 in violation of 18 U.S.C. § 152;  (vii) the submission of false and misleading disclosures to the Court; and (viii) potential multiple violations of the Texas Disciplinary Rules of Professional Conduct and the Rules of Discipline  of the United States District Court of the Southern District of Texas.

On December 18, 2016, Ms. Austin attempted to withdraw the fee application [Docket No. 129, Case No. 14-35557].  The withdrawal was ineffective and not permitted by the Court in light of the circumstances.

With the benefit of new counsel, Ms. Decloutte filed her original complaint against Ms. Austin on December 19, 2016 asserting claims for improper post-petition transfers in violation of 11 U.S.C. § 549, willful violations of the automatic stay, turnover of estate property and contempt [Docket No. 1, Adversary No. 16-3275].  Included in the complaint are the following amounts paid by Ms. Decloutte to Ms. Austin both before and after the petition date:

| | | |
|---|---|---|
| 11/30/12 | $ 200.00 | Credit Card |
| 12/30/12 | $  80.00 | Credit Card |
| 12/30/12 | $ 541.67 | Credit Card |
| 01/30/13 | $ 627.27 | Credit Card |
| 02/28/13 | $ 594.58 | Credit Card |
| 04/28/13 | $ 200.00 | Credit Card |
| 05/28/13 | $ 200.00 | Credit Card |
| 06/28/13 | $ 541.67 | Credit Card |
| 07/28/13 | $ 541.67 | Credit Card |
| 08/28/13 | $ 352.97 | Credit Card |
| 07/13/15 | $1,600.00 | |
| 07/27/15 | $ 400.00 | Credit Card |
| 02/22/16 | $ 600.00 | Credit Card |
| 07/20/16 | $7,325.22 | Cashier's Check |

[Docket No. 1, Adversary No. 16-3275].

On May 12, 2017, Ms. Austin filed a "Disclosure of Compensation of Attorney for Debtor" [Decloutte Exhibit 9], [Docket No. 148, Case No. 14-35557]. In the document, Ms. Austin represents the following:

> 4.     For legal services in connection with Debtor's divorce case, attorney accepted the following payments for post petition services performed in the said case:
>
> | 7/13/15 | $1600.00 |
> | 7/27/15 | $ 400.00 |
> | 2/22/16 | $ 600.00 |

### CERTIFICATION

> I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me.

[Decloutte Exhibit 9], [Docket No. 148, Case No. 14-35557]. The Court finds that Ms. Austin's certification was materially false when made.

On July 16, 2017, Ms. Austin filed her Application to Approve Employment and Payment of Attorney *Nunc Pro Tunc* [Docket No. 152, Case No. 14-35557]. In the application, Ms. Austin requested authority to be employed as Ms. Decloutte's divorce counsel on an hourly fee basis at an hourly rate of $250 [Docket No. 152, Case No. 14-35557]. The basis for the lateness of the application was an alleged misunderstanding of the applicable rules regarding employment of counsel [Docket No. 152, Case No. 14-35557]. The application contains no disclosure of past payments as required by 11 U.S.C. § 329 [Docket No. 152, Case No. 14-35557]. More importantly, the application fails to disclose that at the time of the filing, Ms. Austin had filed a criminal complaint against Ms. Decloutte for theft of the very funds that represented the settlement of Ms. Decloutte's divorce proceeding [Docket No. 152, Case No. 14-35557]. To the contrary, Ms. Austin attempted to hide this fact from the Court by making the following qualified representation:

> 9.     At the time Kelley Austin filed Debtor's case and began representing her in her divorce proceeding, she represented no interest adverse to debtor or the estate in the matters upon which she was engaged, and her employment was in the best interest of this estate.

[Docket No. 152, Case No. 14-35557]. Although the application was not authorized by Ms. Decloutte, the application makes numerous purported representations by Ms. Decloutte.

Concurrent with her employment application, Ms. Austin filed a fee application for the period from October 6, 2014 to July 14, 2017 [Docket No. 153, Case No. 14-35557]. The cover sheet to the application reflects that the services were rendered both pre- and post-petition. [Docket No. 153-2, Case No. 14-35557]. In the application, Ms. Austin seeks approval of fees

and expenses totaling $5,925.00 [Docket No. 153, Case No. 14-35557].  In support of the fee request, Ms. Austin represented that the legal services provided included (i) amendments (26.5 hrs.), (ii) creditor contacts (4.50 hrs.), (iii) confirmation hearings (14.25 hrs.) and (iv) correspondence (10.25 hrs.) [Docket No. 153, Case No. 14-35557].  Ms. Austin further represented that she had received $2,600 in connection with the representation and requested payment of an additional $3,325.00 [Docket No. 153, Case No. 14-35557].  No other payments were disclosed.

### Decloutte Divorce Proceeding

On or about November 30, 2012, Ms. Decloutte and Ms. Austin entered into an agreement for legal services concerning Ms. Decloutte's divorce proceeding [Decloutte Exhibit 7].  Under the agreement, Ms. Decloutte agreed to pay a nonrefundable retainer of $280.00 and an advance deposit of $280.00 [Decloutte Exhibit 7].  The agreement further provides for a nonrefundable minimum fee of $3,500.00 [Decloutte Exhibit 7].  Although not specifically referenced in the agreement, Ms. Austin charged Ms. Decloutte a "fee" of $700.00 for the privilege of paying the minimum fee over time [Decloutte Exhibit 5].  Finally, the agreement provides that "[t]he rights set forth in this agreement are subject to the professional responsibility requirements which regulate [a]ttorneys" [Decloutte Exhibit 7].  This agreement was not submitted to the Court for assumption under 11 U.S.C. § 365 nor did the Court ever approve this agreement.

A settlement was reached in the divorce proceeding during mediation on November 17, 2015 [Decloutte Exhibit 16].  Under the settlement, Ms. Decloutte was to receive $15,000 as an equalization of the division of the community estate.  [Decloutte Exhibit 16].  The Court was not notified of the settlement nor was the settlement approved under FED. R. BANKR. P. 9019.  The Court notes that the terms of the settlement are different than Ms. Austin previously represented in her Rule 2016(b) statement.

By letter dated July 20, 2016, Ms. Austin notified Ms. Decloutte that (i) in connection with the settlement, she had received a $10,000 cashier's check payable to Ms. Decloutte; (ii) she had deducted her outstanding attorney's fees in the amount of $7,325.22; and (iii) the balance of $2,674.78 was being forwarded to Ms. Decloutte [Decloutte Exhibit 8].  In order to accomplish the foregoing, Ms. Austin endorsed Ms. Decloutte's name on the back of the check [Decloutte Exhibit 20].  The endorsement does not indicate that Ms. Austin was signing Ms. Decloutte's name pursuant to a properly executed power of attorney or otherwise.  Moreover, at the time of the deduction, the Court had not approved Ms. Austin's employment or authority to act with respect to estate property, the terms of any employment or the amount of any compensation for Ms. Austin's services.  At a minimum, Ms. Austin's conduct violated the automatic stay as well as the provisions of the Bankruptcy Code regarding the compensation of attorneys acting on behalf of a debtor.

Ms. Austin testified that when she heard that a problem existed with her endorsement of the cashier's check, she filed a police report which stated that Ms. Decloutte had stolen money from her.  At trial, Ms. Austin gave the following testimony:

Q:      Did you file a criminal complaint against Ms. Decloutte?

. . .

A:      Yes.

Q:      On what basis?

A:      The basis was that there had been a report to Bank of America that I had
        committed forgery and theft.   And based on that report, I submitted a
        report to make sure that I protected myself.

Transcript, 10/3/2017, p. 35.  Ms. Austin understates just how far she went "to protect" herself.
In reliance upon Ms. Austin's complaint, Ms. Decloutte was indicted and a warrant issued for her
arrest on April 24, 2017.  On May 17, 2017, Ms. Decloutte was arrested and formally charged
with felony theft of the $10,000 [Decloutte Exhibit 4].   In her testimony, Ms. Decloutte
emotionally described the event of being arrested in front of her teenage daughter and going to
jail:

Q:      What came about with the charges?

A:      In May the -- Monday, I want to say it was the Monday after Mother's
        Day, I got a knock on my door and it was a police officer and I got
        arrested for stealing a $10,000 check, stealing $10,000.

Q:      Let me back up. So what time of the day is it, morning, night?

A:      It was in the morning.

Q:      And someone knocks on the door.

A:      Correct.

Q:      And you open the door.  Who's home?

A:      I think my 19-year old daughter did. She opened the door and the officer
        explained to me that there were charges against me, that I was going to
        jail. My daughter saw me get arrested, and she was just devastated, so I
        gave her my bank card, you know, told her, she may have to bail me out
        and my daughter knows my PIN number, and she actually came and
        visited me that day in jail, and she told me, you know, she had to go to
        several banks because my card didn't work. My daughter was devastated,
        she couldn't remember my PIN number, to see her mother get arrested, it
        was just devastating to her.

. . .

Q:    All right. So the cops come, they arrest you, they take you right then that morning?

A:    Well, I work from home, so I was in my pajamas, and I asked them could I go change, and they followed me pretty much into the bathroom and they searched. They said they wanted to make sure there were no drugs that I can take, because there's been cases where people -- cop kills. So they had to search my bathroom, make sure there was nothing I could take. They allowed me to put clothes on, and then they took me to jail.

Q:    All right. When they took you to jail, where did they take you?

A:    So the Fort Bend Police -- Sheriff's Department.

Q:    Okay. Did they book you in, what did they do?

A:    Yeah, they booked me in, there was a nurse who kept on checking my blood pressure and she stated that it was high. And she stated that if it didn't drop, that she was going to have to call the nurse practitioner to give me something to make it go down. And I don't have high blood pressure. Like I said, it was devastating for me to be there, and then I pretty much had to calm myself down, because I didn't want to be in jail, sedated, not knowing my surroundings or whatever, so I had to pretty much calm myself down to get my blood pressure back up -- so they wouldn't give me -- inject me with anything.

Q:    All right. Did they put you in a cell by yourself?

A:    No. I think there were three other prisoners who had -- one stated she had been to I guess Conroe prison or whatever the state prison for a year or so, and the other one stated she had been there for maybe two years. So, no, I was with criminals, I was treated like I was a criminal.

Q;    How long were you in jail that day?

A:    All day. I went in, I guess that morning, about 9 or 10, I didn't get into the cell until about 11. And then I didn't get released until about 6 or 7 o'clock that afternoon.

Q:    Who was at home with your daughter?

A:      My daughter was home by herself, but later on that evening, my two
         children, my other two teenaged children came home.

Q:      How old are the other two children?

A:      16 -- I'm sorry, 15 and at the time 17, 14 and 17 at the time.

Transcript, 12/7/2017, pp 14-17. 35. Ms. Decloutte was ultimately released after posting bail in
the amount of $2,000  [Decloutte Exhibit 4].

### Bankruptcy Filings by Kelley Austin

On June 18, 2007, Ms. Austin filed her first chapter 13 case.  [Docket No. 1, Case No.
07-34061].  Ms. Austin signed the petition as a debtor [Docket No. 1, Case No. 07-34061].
Notably, the required pre-filing credit counseling course was not taken until June 28, 2007
[Docket No. 11, Case No. 07-34061].  An amended petition was filed on June 29, 2007 in an
apparent effort to circumvent the problem [Docket No. 10, Case No. 07-34061].  A comparison
of the original petition and the amended petition yields no substantive differences.  On March 25,
2008, the Court confirmed Ms. Austin's eighth amended plan [Docket No. 112, Case No. 07-
34061].  The Court approved a plan modification by order entered April 28, 2009 [Docket No.
174, Case No. 07-34061].  On August 17, 2009, the chapter 13 trustee filed his motion to dismiss
[Docket No. 197, Case No. 07-34061].  The Court granted the motion by ordered entered
November 12, 2009 [Docket No. 203, Case No. 07-34061].

On May 3, 2010, Ms. Austin and her spouse, Ray Austin, filed a second chapter 13 case
[Docket No. 1, Case No. 10-33624].  Ms. Austin signed the petition as a debtor [Docket No. 1,
Case No. 10-33624].  On July 7, 2010, the chapter 13 trustee filed his amended motion to
dismiss the case for nonpayment [Docket No. 37, Case No. 10-33624].  The motion was granted
and the case dismissed by order entered September 22, 2010 [Docket No. 45, Case No. 10-
33624].

On November 22, 2010, Ms. Austin and her spouse, Ray Austin, filed a third chapter 13
case [Docket No. 1, Case No. 10-40509].  Ms. Austin signed the petition as a debtor [Docket
No. 1, Case No. 10-40509].  The Court confirmed a chapter 13 plan on April 26, 2011 [Docket
No. 49, Case No. 10-40509].  On April 16, 2012, the chapter 13 trustee filed his motion to
dismiss the case for nonpayment [Docket No. 73, Case No. 10-40509].  As reflected in the
trustee's motion, Ms. Austin was delinquent in her plan payments in the amount of $15,900 at
time the motion was filed [Docket No. 73, Case No. 10-40509].  The motion was granted and the
case dismissed by order entered May 16, 2012 [Docket No. 80, Case No. 10-40509].

On July 2, 2012, Ms. Austin and her spouse, Rayon Austin, filed a fourth chapter 13 case
[Docket No. 1, Case No. 12-35092].  Ms. Austin signed the petition both as a debtor and as an
attorney [Docket No. 1, Case No. 12-35092].  After a series of amended plans, objections and
motions to dismiss, the Court confirmed a plan by order entered September 24, 2013 [Docket
No. 112, Case No. 12-35092].  By order entered November 19, 2015, the Court approved Ms.

Austin's sixth motion to modify [Docket No. 178, Case No. 12-35092]. The Court approved a second modification on August 8, 2016 [Docket No. 201, Case No. 12-35092]. Ms. Austin converted the case to a chapter 7 case on January 30, 2017 [Docket No. 222, Case No. 12-35092]. The case remains pending subject to a determination regarding the exceptions to discharge under 11 U.S.C. § 523 discussed below.

**The Turnover Action**

On December 19, 2016, Ms. Decloutte filed a complaint against Ms. Austin seeking to recover the sum of $13,805.05 pursuant to 11 U.S.C. § 549 [Docket 1, Adversary No. 16-3275]. In her complaint, Ms. Decloutte asserted that the funds had been in Ms. Austin's IOLTA account on the date of Ms. Decloutte's bankruptcy filing but were subsequently removed without authority and in violation of the automatic stay [Docket 1, Adversary No. 16-3275]. Ms. Decloutte also requested damages for violation of the automatic stay under 11 U.S.C. § 362(k) and turnover of the funds pursuant to 11 U.S.C. § 542 [Docket 1, Adversary No. 16-3275].

Ms. Austin filed her answer on March 17, 2017 denying Ms. Decloutte's allegations of wrongdoing [Docket 11, Adversary No. 16-3275].

By emergency motion filed April 18, 2017, Ms. Decloutte sought sanctions against Ms. Austin for violating the automatic stay in taking $6,479.83 from her IOLTA account that belonged to Ms. Decloutte and depositing the funds into her operating account [Docket 12, Adversary No. 16-3275]. Ms. Decloutte also sought an award of attorney's fees and punitive damages as well as turnover of the funds [Docket 12, Adversary No. 16-3275]. Ms. Austin filed her response on May 10, 2017 [Docket 15, Adversary No. 16-3275].

On June 5, 2017, Ms. Decloutte filed her motion to compel discovery [Docket 20, Adversary No. 16-3275]. In the motion, Ms. Decloutte requested an order compelling Ms. Austin to produce records that would identify clients of Ms. Austin that she represented in family law matters and that had subsequently filed a bankruptcy case [Docket 20, Adversary No. 16-3275]. On June 21, 2017, the Court conducted a hearing on the motion [Docket 21, Adversary No. 16-3275]. After hearing from the parties, the Court ordered the production of a list identifying clients of Ms. Austin similar to Ms. Decloutte [Docket 21, Adversary No. 16-3275].

On June 28, 2017, Ms. Decloutte filed her motion for contempt against Ms. Austin for failing to comply with the Court's June 21, 2017 directive [Docket 22, Adversary No. 16-3275]. Ms. Austin filed her response on July 5, 2017 [Docket 24, Adversary No. 16-3275]. After conducting a hearing on July 5, 2018, the Court declined to take further action and reserved the fee request for a final trial of all matters on the merits [Unnumbered Docket Entry after Docket No. 24, Adversary No. 16-3275]. At trial, Ms. Decloutte adduced evidence reflecting that despite multiple opportunities, Ms. Austin failed to provide frank and complete responses to discovery.

**The Dischargeability Action**

On May 5, 2017, Ms. Decloutte filed her original complaint in Adversary No. 17-3237 seeking a determination that her claims against Ms. Austin should be excepted from any discharge granted to Ms. Austin on the grounds of (i) fraud or defalcation while acting in a fiduciary capacity (§ 523(a)(4)); and (ii) obtaining property through the use of false pretenses, false representations or actual fraud (§ 523(a)(2)).

In her complaint, Ms. Decloutte made the following allegations:

6.      Defendant, Kelley L. Austin was Decloutte's former bankruptcy attorney and commenced her 2014 Bankruptcy Case.

7.      Austin also represented Decloutte in two cases in the 387th District Court in Fort Bend County, Texas. Austin started representing Decloutte in January of 2013, in Decloutte's divorce case (2012-DCV-201744) and in represented Decloutte again in her 2014 Child Support Enforcement case (2010-DCV-185180).

8.      Decloutte started paying Austin on November 30, 2012, after she was served with a petition for divorce.

9.      Decloutte went on to pay Austin a total of $3,879.83 by August 28, 2013. Austin's IOLTA ("Trust Account") records reflect that no further payments were deposited until July, 13, 2015.

10.     On October 20, 2014, Austin filed Decloutte's Statement of Current Monthly Income, Creditor Mailing List, Disclosure of Compensation of Attorney, Proposed Wage Order, Schedules, Plan, Statement of Financial Affairs and Decloutte's payment advices.

11.     Austin did not disclose the $3,879.83, which was in Austin's Trust Account on behalf of Decloutte.

12.     On October 22, 2014, Austin filed a Fixed Fee Agreement, which did disclose receiving $1,000.00 as a pre-petition retainer, but again did not disclose the $3,879.83 that was still in Austin's Trust Account.

13.     Decloutte made additional payments to Austin after the Bankruptcy was filed, total $2,600.00, which to this date has not been disclosed.

14.     On November 30, 2015, Austin unilaterally decided to withdraw $4,422.84 from Decloutte's funds that were held in Austin's Trust Account. This was done after the Bankruptcy was filed and without authorization from the Bankruptcy Code or by a Court Order.

15.     Further, from March 22, 2016 to July 20, 2016, Austin withdrew $9,382.21 from Decloutte's funds that were held in Austin's Trust

Account. This was done after the Bankruptcy was filed and without authorization from the Bankruptcy Code or by a Court Order.

16.     On or about July 20, 2016, Austin indorsed Decloutte's name on a $10,000.00 property equalization check from Decloutte's divorce case and deposited $7,325.22 into Austin's Trust Account.

17.     Austin then gave Decloutte a check for $2,674.78, which was not honored by Austin's bank. Austin did later tender the $2,674.78 to Decloutte.

18.     On September 13, 2016, Austin filed a Chapter 13 Fee Application requesting payment for Service in connection with Decloutte's husband's Chapter 7 case. However, none of the funds that were held in Austin's Trust Account were disclosed.

19.     On September 14, 2016, Austin filed an amended Chapter 13 Fee Application requesting payment for Service in connection with Decloutte's husband's Chapter 7 case. However, none of the funds that were held in Austin's Trust Account were disclosed.

[Docket No. 1, Adversary No. 17-3237]. On June 12, 2017, Ms. Austin filed her answer denying that she engaged in any improper activity [Docket No. 8, Adversary No. 17-3237].

On July 24, 2017, both Ms. Austin's personal bankruptcy case and the related dischargeability adversary proceeding were transferred to the undersigned judge [Docket No. 243, Case No. 12-35092]; [Docket No. 9, Adversary No. 17-3237].

## **The Trial**

After a series of continuances, the Court convened a trial on all matters on October 3, 2017. During the first day of trial, the Court heard from Ms. Austin. At the conclusion of the day, the trial was continued to October 25, 2017. During the second day of trial, the Court heard from Ms. Austin and Jose Vela. Mr. Vela offered expert testimony regarding the amount of fees that Ms. Decloutte could expect to pay in defending the criminal proceeding. At the conclusion of Mr. Vela's testimony, the Court continued the trial to December 7, 2017. During the third day of trial, the Court heard from Ms. Decloutte and again from Ms. Austin. The Court also heard closing arguments. During closing argument, the Court had the following discussion with Ms. Austin's counsel:

THE COURT: What has she [Ms. Austin] done to try to correct the fact that she caused a wrongful criminal complaint to be issued and her own testimony as a defensive mechanism in a civil dispute? What has she done to try to correct that?

MR. POPE: She has reached out to the Fort Bend County DA.

THE COURT: How do I know that?

Opinion
Page 13 of 26

MR. POPE: I have nothing in writing to give Your Honor about that, but I know she has reached out to the Fort Bend County DA by what she has told me. We also -- strike that, because that would get into -- she has reached out to the Fort Bend County DA, Your Honor, and if they're willing to comply in any way that she can in that matter, Your Honor.

We've made opposing Counsel aware of that, that she would be willing to comply and make herself available to help Ms. Decloutte in that matter, in any way that she could, and maintains that she's still willing to do that.

THE COURT: Has she gone to the DA and said, it wasn't my money, I made a mistake, I apologize?

MR. POPE: I cannot make a representation to this Court as to that because I did not ask her if she said those words or anything similar thereto to the DA, so I don't want to make a misrepresentation to the Court.

But I will tell you as I stand here, that she did she say she would make herself available in any way, so if that's what's necessary she would be willing to do that.

THE COURT: How many times have I begged you talk to your client and get this situation fixed? How many times have I begged you to do something?

MR. POPE: Many times, Your Honor,. . . .

MR. POPE: Just last but not least, I do believe that the system and the process is intact.

THE COURT: How so?

MR. POPE: I don't believe that –

THE COURT: A person stands to go to jail because your client abused her position and has done nothing to fix it. How could the system possibly have been protected, and how could this possibly be right?

If your client was truly genuine, she would have gone to the DA, she would have signed an affidavit that says, this was not my money, I made a mistake, I apologize. You know, not once, despite -- I don't know of any federal judge that's ever begged someone to get something resolved.

I -- she certainly hasn't apologized to me for the misrepresentations that she made to me. She's not, to my knowledge, told the DA that she made a mistake and that she apologized. She's not apologized to Ms. Decloutte, she's done nothing other than to hire a good lawyer.

Transcript, 12/7/2017, pp. 71-73. After giving Ms. Austin one final opportunity to make amends for her actions and Ms. Austin declining that offer (Transcript, 12/7/2017, p. 74), the Court issued the following ruling:

COURT'S RULING

THE COURT: I do intend on entering a written opinion. There will be a subsequent hearing because part of that opinion will be the initiation of disbarment proceedings. There will also be a referral to the United States Attorney for violation of the criminal laws of the United States. There will also be a referral and a recommendation for disbarment to the United States District Court, as well as the State of Texas.

That will take me some time to do, but it will be a complete road map of this case, and everything that has occurred and all of the conduct.

I'm going to make two preliminary findings which I want a copy of the ruling, Mr. Singh delivered to the Fort Bend District Attorney, and my -- and an expression of my hope that this will be reviewed and the right thing will be done.

First, I am going to find, and there is no genuine dispute, that Ms. Austin had no interest legal or equitable in the $10,000 that is the subject of the criminal proceeding in Fort Bend County.

Second of all, based upon Ms. Austin's testimony, I'm going to find that a false complaint was filed in that criminal proceeding as a defensive mechanism in order to obtain an advantage in a civil dispute.

Those two findings will be incorporated into my final decision, but as my decision will take some time, I want a copy of my ruling to be delivered to the Fort Bend County District Attorney's Office, and it is my hope, I don't have -- I want to make it very clear, I have no authority over the Fort Bend District Attorney's Office. I have no authority, at least that I've -- in any proceeding which has yet been filed to have -- to exercise jurisdiction over Fort Bend County or any of its agencies. It is simply a request that the Fort Bend County District Attorney's Office look at these findings and my simple request that the right thing be done. When that has been done, Mr. Singh, I would like for you to file a certificate of compliance with the Court so that I know it has occurred.

Mr. Pope, you will get a decision with subsequent hearing dates for the disbarment proceeding. I certainly will notify the other bankruptcy judges of what has occurred. I don't know how that will affect Ms. Austin's interim ability to practice law in the bankruptcy court. I suspect it may have an effect. It certainly will in my court.

But you will get notice of those dates. This proceeding is far from over. I have given your client multiple opportunities to follow through on her stated expression that she wants to do the right thing, it's a hollow promise. It's like everything else she does. It is laced with falsehood and it is not genuine in any respect, and I will not let the bankruptcy process in the Southern District of Texas be tainted by someone who fails to understand what integrity and honor mean. They simply won't contaminate this process. I will put a stop to it.

Transcript, 12/7/2017, pp. 74-77. The Court's oral findings on the record are incorporated herein pursuant to FED. R. BANKR. P. 7052.

### Analysis

The Court has jurisdiction over these adversary proceedings and contested matters pursuant to 11 U.S.C. §§ 1334(a), (e)(1) and (e)(2).  These proceedings are core proceedings arising under title 11 pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), (E), (I) and (O).  The Court has constitutional authority to enter a final order in this contested matter under the Supreme Court's holding in *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

The Local Rules of the United States District Court for the Southern District of Texas apply to practice before the bankruptcy court.  LOC. R. BANKR. P. 1001-1(b).  District Court Local Rule 83.1L provides that the Rules of Discipline contained in Appendix A to the Local Rules govern attorney conduct in the Southern District of Texas.  Rule 1A of Appendix A provides that the minimum standard of practice in the Southern District of Texas shall be the Texas Disciplinary Rules of Professional Conduct.  *See In re Proeducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009).  Rule 1B of Appendix A provides that a violation of the Texas Disciplinary Rules of Professional Conduct shall be grounds for disciplinary action although the Court is not limited by the Texas rules.  *See Id.*

### Rule 3.03. Candor Toward the Tribunal

Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct provides, in part, that:

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal;

(2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act;

. . .

      (5) offer or use evidence that the lawyer knows to be false.

The duty of candor applies not only to the duty to disclose material information relating to the merits of a matter, but also to "facts relating to the management of the case." *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 146 F. Supp. 2d 643, 652-53 (D.N.J.) 2001 (citing the comments to the New Jersey Rule of Professional Conduct 3.3 - Candor Towards the Tribunal). *See In re Thomas*, 337 B.R. 879, 892, n.50 (Bankr. S.D. Tex. 2006) (noting the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT, RULE 3.03: CANDOR TOWARD THE TRIBUNAL is similar in substance to NEW JERSEY RULE OF PROFESSIONAL CONDUCT, RULE 3.3(A)).   A failure to disclose can constitute a breach of an attorney's duty of candor. *Blackwell v. Dep't of Offender Rehabilitation*, 807 F.2d. 914, 915 (11th Cir. 1987).  Ms. Austin failed to disclose the true nature of her relationship with Ms. Decloutte.  Ms. Austin failed to accurately disclose the amount of compensation paid to her by Ms. Decloutte.  Ms. Austin failed to inform the Court that she had facilitated her client's arrest while seeking to have herself employed and paid as Ms. Decloutte's attorney.  Ms. Austin attempted to affirmatively mislead the Court by filing false certifications and disclosures that utilized verb tenses and limiting phrases to cloak the truth.  Ms. Austin violated her duty of candor to the Court.

## Rule 4.04. Respect for Rights of Third Persons

      Rule 4.04 provides that

      (a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

      (b) A lawyer shall not present, participate in presenting, or threaten to present:

      (1) criminal or disciplinary charges solely to gain an advantage in a civil matter; or

      (2) civil, criminal or disciplinary charges against a complainant, a witness, or a potential witness in a bar disciplinary proceeding solely to prevent participation by the complainant, witness or potential witness therein.

Based on Ms. Austin' own testimony, the Court finds that Ms. Austin intentionally filed a false criminal complaint against Ms. Decloutte for theft of funds that belonged not to Ms. Austin but to Ms. Decloutte solely to gain an advantage in an anticipated fee dispute.  The facts that (i) the funds were property of Ms. Decloutte's bankruptcy estate; (ii) Ms. Austin concealed her actions from this Court; and (iii) Ms. Austin sought employment and payment by the bankruptcy estate while seeking to have her client jailed only further highlight the egregious nature of Ms. Austin's conduct.

## Rule 1.14. Safekeeping Property

Rule 1.14 provides that

> (a) A lawyer shall hold funds and other property belonging in whole or in part to clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property. Such funds shall be kept in a separate account, designated as a "trust" or "escrow" account, maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other client property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

> (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

> (c) When in the course of representation a lawyer is in possession of funds or other property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interest. All funds in a trust or escrow account shall be disbursed only to those persons entitled to receive them by virtue of the representation or by law. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separated by the lawyer until the dispute is resolved, and the undisputed portion shall be distributed appropriately.

Upon receiving the $10,000 payment from Ms. Decloutte's former spouse, Ms. Austin deducted her attorney's fees from the amount and tendered the balance in the form of a dishonored check to Ms. Decloutte.[1]   These acts were done in violation of the automatic stay imposed by 11 U.S.C. § 362 and without Ms. Decloutte's consent or the required court approval.   Moreover, no accounting was ever provided.   To the contrary, Ms. Austin presented evidence during trial that reflects that she manufactured an accounting of her accounts after the fact because of a purported computer malfunction and resulting data loss.   The accounting presented to the Court was proven to be erroneous and further calls into question Ms. Austin's veracity and motive. Ms. Austin violated Rule 1.14.

---

[1]   The check was later honored.

**Rule 8.04. Misconduct**

Rule 8.04 provides, in part, that

(a) A lawyer shall not:

    (1) violate these rules, knowingly assist or induce another to do so, or do so through the acts of another, whether or not the violation occurred in the course of a client-lawyer relationship;

    (2) commit a serious crime or commit any other criminal act that reflects adversely on the lawyers honesty, trustworthiness or fitness as a lawyer in other respects;

    (3) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

    . . .

(b) As used in subsection (a)(2) of this Rule, "serious crime" means barratry; any felony involving moral turpitude; any misdemeanor involving theft, embezzlement, or fraudulent or reckless misappropriation of money or other property; or any attempt, conspiracy, or solicitation of another to commit any of the foregoing crimes.

As set forth above, Ms. Austin's behavior in this case is inexplicable.  Ms. Austin (i) failed to make required disclosures to the Court; (ii) affirmatively misstated/omitted material facts to the Court in an effort to obtain orders from the Court that would have minimized her culpability; (iii) failed to accurately account for and disclose monies obtained from Ms. Decloutte; and (iv) facilitated the criminal indictment of her client in order to silence her voice in challenging Ms. Austin's fees.  Further, 18 U.S.C. § 153 provides that a "person described in subsection (b) who knowingly and fraudulently appropriates to the person's own use, embezzles, spends, or transfers any property or secretes or destroys any document belonging to the estate of a debtor shall be fined under this title, imprisoned not more than 5 years, or both."  The definition of person in subsection (b) includes an attorney acting in connection with the administration of a bankruptcy estate.  11 U.S.C. 153(b).  Section 152 provides, in part, that "[a] person who—(1) knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor; (2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11; [or] (3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11; . . . shall be fined under this title, imprisoned not more than 5 years, or both."

    Ms. Austin's conduct in this case violates Rule 8.04.

## Application to Employ – Docket No. 152

On July 16, 2017, Ms. Austin filed her "Application to Approve Employment and Payment of Attorney Nunc Pro Tunc" [Docket No. 152, Case No. 14-35557]. In her application, Ms. Austin seeks to be employed as Ms. Decloutte's divorce counsel *nunc pro tunc* to October 6, 2014. *Id.* The basis for *nunc pro tunc* relief is a purported misunderstanding of the language in her fixed fee agreement. The application is three pages and contains none of the disclosures or certifications that are required for the approval of special counsel. *See* 11 U.S.C. § 329, FED. R. BANKR. P. 2016.

"When considering whether to grant an application to employ a professional *nunc pro tunc*, a bankruptcy court must first determine whether it would have granted the application pursuant to the applicable provisions of the Bankruptcy Code if the application was otherwise timely filed." *In re Lyons*, 439 B.R. 401, 404-05 (Bankr. S.D. Tex. 2010). Section § 327(e) of the Bankruptcy Code provides for the employment of special counsel if the employment is in the best interest of the estate and the attorney does not hold an adverse interest to the debtor or the estate with respect to the matter that is the subject of the proposed employment. The standards of § 327 require strict compliance. *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005); *Lyons*, 439 B.R. at 405. The applicant bears the burden of proof. *Lyons*, 439 B.R at 405; *In re Silver Lion, Inc.*, No. 09–80414, 2010 WL 2735710 (Bankr. S.D. Tex. July 12, 2010); *In re Johnson*, 433 B.R. 626, 635 (Bankr. S.D. Tex. 2010).

Local Rule of Bankruptcy Procedure 2014(b) requires that every *nunc pro tunc* employment application contain the following:

(A) An explanation of why the application was not filed earlier;

(B) An explanation why the order authorizing employment is required *nunc pro tunc*;

(C) An explanation, to the best of the applicant's knowledge, how approval of the application may prejudice any parties-in-interest.

Ms. Austin's application fails to provide the required information. Ms. Austin states that she believed that she did not have to file an application based on a misreading of her fixed-fee agreement. The form of fixed-fee agreement is promulgated by the Bankruptcy Court and is used in thousands of cases every year. *See* LOC. R. BANKR. P. 2016-1(d)(1). The Court is aware of no similar misunderstanding by any other counsel. Ms. Austin testified that she considers herself a competent bankruptcy practitioner. The Court rejects Ms. Austin's explanation for the failure to file the required application as a manufactured excuse. The Court finds it enlightening that the disclosures required to be submitted with an employment application were not made— disclosures that would have been problematic given Ms. Austin's prior conduct and statements in the case. Further, the application does not address sections (B) or (C). Notably missing from the application is (i) any statement by Ms. Austin informing the Court that Ms. Decloutte did not authorize the application despite the application containing multiple representations purportedly

by Ms. Decloutte; and (ii) an explanation by Ms. Austin of her ability to seek to be employed by the Debtor without the Debtor's consent.

The Court finds the application to be a late attempt by Ms. Austin to shield herself from the ramifications of her conduct that are the subject of these proceedings. Ms. Austin offers no legitimate explanation that would support *nunc pro tunc* approval. The Application to Approve Employment and Payment of Attorney *Nunc Pro Tunc* is denied.

## Chapter 13 Fee Application from October 6, 2014 to July 7, 2017 – Docket No. 153

Concurrent with her employment application, Ms. Austin also filed a fee application on July 16, 2017 [Docket No. 153, Case No. 14-35557]. In the application, Ms. Austin seeks an award of $5,675.00 for fees and expenses related to representing Ms. Decloutte in her divorce proceeding. The substance of the entire fee application is the following:

| Name of Attorney/Paralegal | Hourly Rate | Est. Hours | Rate x Hours |
|---|---|---|---|
| **1. Kelley Austin** | **$100.00** | **56.75** | **$5,675.00** |

| Expenses | Amount |
|---|---|
| **1. Expenses** | **$250.80** |

***Counsel verifies the time expended was necessary and conferred a benefit to the Debtor(s) and the estate.

Description of Services
**Services for representation in divorce proceeding. Rate reduced to $100 hourly from $250 contractual rate. Fees for most telephone calls and emails have not been included. Fees are primarily for court appearances, document drafting, communication with opposing counsel and the court, meetings and mediation. $2600 received post-petition has been credited. Detailed invoice attached. Summary of charges are as follows:**

**Court Appearances 14.25 hours**
**Mediation 4.5 hours**
**Document Drafting 26.50 hours**
**Communcation 10.25 hours**
**Meetings 1.25 hours**

[Docket No. 153, Case No. 14-35557] (typographical errors included).

Compensation of an attorney is governed by 11 U.S.C. § 330. Section 330 provides that that "the court may award to ... a professional person employed under section 327 or 1103—(A) reasonable compensation for actual, necessary services rendered by the ... professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses." As an initial matter, Ms. Austin was not employed under § 327 or § 1103. As such, the plain wording of the statute dictates that the application be denied.

Even if the Court had approved Ms. Austin's *nunc pro tunc* employment application, it would deny the instant request for compensation. First, § 330(a)(3) sets forth a number of relevant factors to be considered in determining the amount of reasonable compensation to be

awarded to a professional. The application fails to address these or any other considerations that would provide a basis for the award of compensation, including the requirements of LOC. R. BANKR. P. 2016-1(d)(2). Second, the summary attached to the application was created after the fact and is inaccurate. The summary fails to follow the U.S. Trustee guideline requirement that time be recorded in one-tenth of an hour increments. Third, Ms. Austin's conduct in this case demonstrates either gross incompetence or the intentional disregard for the rule of law. As Ms. Austin testified that she is a competent bankruptcy lawyer, the Court must assume the latter. Fourth, Ms. Austin's failure to attach a genuine invoice to the application under the present circumstances is troublesome at best. Finally, to award compensation in this case would violate all notions of decency and condone egregious illegal conduct.

The application for compensation is denied. Ms. Austin shall immediately return to Ms. Decloutte all post-petition monies paid to Ms. Austin by Ms. Decloutte in the amount of $2,600 plus the $1,000 paid pre-petition. In addition, Ms. Austin shall refund to the chapter 13 trustee all monies paid to her by the trustee under her fixed-fee agreement. All payments shall be made within fourteen (14) days of the entry date of this opinion and the accompanying judgment.

### Exceptions to Discharge

Ms. Decloutte seeks a determination that the amounts owed to her by Ms. Austin are excepted from Ms. Austin's discharge in her pending bankruptcy case pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(2)(A). The exceptions to a bankruptcy discharge are set forth in § 523(a) and are narrowly construed in the debtor's favor. *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998). To prevail, Ms. Decloutte must establish each of the requisite elements by a preponderance of the evidence.

## 11 U.S.C. 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge "any debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). In order to prevail, Ms. Decloutte must establish that (1) Ms. Austin made a representation; (2) at the time the representation was made, Ms. Austin knew it was false; (3) Ms. Austin made the representation with the intention and purpose to deceive Ms. Decloutte; (4) Ms. Decloutte relied on the representation; (5) Ms. Decloutte sustained losses as a proximate result of the representations. *In re Bercier*, 934 F.2d. 689, 692 (5th Cir. 1991).

Ms. Decloutte asserts that Ms. Austin fraudulently endorsed Ms. Decloutte's name on the $10,000 settlement check without her permission and then kept $7,325.22.[2] The Court agrees that the evidence supports the foregoing assertions. Ms. Austin's misrepresentations, however, were made to a third-party financial institution through the use of a fraudulent endorsement. The

---

[2] These funds were subsequently returned to Ms. Decloutte by a third party financial institution.

Court finds that Ms. Decloutte failed to establish elements 3 and 4. Accordingly, the claim for nondischargeability under 11 U.S.C. § 523(a)(2)(A) is denied.

## 11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code excepts from discharge "any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Fraud under § 523(a)(4) involves "intentional deceit, rather than implied or constructive fraud." *Star High Yield Inv. Mgmt. Corp., Inc. v. Schwartz (In re Schwartz),* 2008 WL 3285770 *4 (Bankr. S.D. Tex. Aug. 7, 2008) (*citing In re Swor,* 2008 WL 938940 *5 (Bankr. S.D. Tex. Apr.4, 2008)); *In re McDaniel*, 181 B.R. 883 (Bankr. S.D. Tex. 1994). Defalcation "is a willful neglect of duty, even if not accompanied by fraud or embezzlement." *In re Bennett*, 989 F.2d 779, 790 (5th Cir.1993) (citing *Moreno v. Ashworth*, 892 F.2d 417, 421 (5th Cir.1990)). Defalcation requires the "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1757 (2013).

For purposes of § 523(a)(4) the definition of a fiduciary is limited to "instances involving express or technical trusts." *In re Miller*, 156 F.3d 598, 602 (5th Cir.1998); *Star High Yield Inv. Mgmt. Corp., Inc. v. Schwartz (In re Schwartz),* 2008 WL 3285770 *5 (Bankr. S.D. Tex. Aug. 7, 2008). In Texas, a fiduciary is a "person owing a duty of integrity and fidelity ... apply[ing] to any person who occupies a position of peculiar confidence towards another." *Lee v. Hasson*, 2007 WL 236899 at *8 (Tex. App.—Houston [14 Dist.] Jan. 30, 2007, rev. denied) (citing *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 512 (Tex.1942)); *Star High Yield Inv. Mgmt. Corp., Inc. v. Schwartz (In re Schwartz),* 2008 WL 3285770 *5 (Bankr. S.D. Tex. Aug. 7, 2008). Under Texas law, an attorney owes a fiduciary duty to the client. *In re TOCFHBI, Inc.*, 413 B.R. 523 (Bankr. N.D. Tex. 2009); *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005).

Embezzlement is defined for purposes of § 523(a)(4) as the " 'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.' " *In re Miller*, 156 F.3d 598, 602 (5th Cir.1998) (*quoting Greyhound Lines Inc. v. Thurston (In re Thurston)*, 18 B.R. 545, 550 (Bankr. M.D. Ga. 1982) *quoting* 3 COLLIER ON BANKRUPTCY ¶ 523.14(3), 523–106 (15th ed.1981)).

Ms. Decloutte established by a preponderance of the evidence that Ms. Austin committed fraud and defalcation while acting in a fiduciary duty as well as embezzlement in forging Ms. Decloutte's name to the settlement check and keeping the proceeds. Such actions also violated the automatic stay under 11 U.S.C. § 362. In an effort to immunize her actions, Ms. Austin filed a false criminal complaint against Ms. Decloutte in an effort to affirmatively silence any objection to her fees. Ms. Austin acted intentionally with deliberate disregard of her obligations

to her client as well as to her profession.   Ms. Decloutte's claims against Ms. Austin are nondischargeable under 11 U.S.C. § 523(a)(4).[3]

The more difficult issue is quantifying the amount of Ms. Decloutte's claim.   The full settlement payment of $10,000 has been returned to Ms. Decloutte by Bank of America.   The primary damage suffered by Ms. Decloutte that can be quantified is the incurrence of significant attorney's fees plus the value of a day of a person's liberty wrongfully taken.   The only testimony adduced on this issue was that of Ms. Decloutte who testified that if she had to put a number on being wrongfully taken to jail while her daughter watched, the number would be one million dollars.

## **Sanctions**

When imposing sanctions, the Court recognizes that it must impose the least onerous sanction to address the situation.   *In re Parsley*, 384 B.R. 138, 182 (Bankr. S.D. Tex. 2008).   Ms. Decloutte is entitled to the recovery of her attorney's fees under 11 U.S.C. 362(k) and the Court's inherent power.   Ms. Austin shall pay the reasonable fees and costs incurred by Ms. Decloutte's counsel in connection with this proceeding as well as the criminal proceeding in Fort Bend County, Texas.   Ms. Decloutte's counsel shall file a detailed statement of its respective fees and costs with the Clerk of the Court within fourteen (14) days of the entry date of this Opinion and accompanying judgment.   Ms. Austin shall file any objection to the requested fees and expenses within seven (7) days thereafter.   If Ms. Austin files an objection, such objection must specifically identify (i) the time entries to which she objects; and (ii) the legal or factual basis for the objection. If no timely objection is filed, Ms. Austin shall pay such fees and costs within fourteen (14) days after the expiration of the deadline to object.   If an objection is filed, the Court will hold a hearing on the reasonableness of the disputed fees and costs.   If the objection is overruled or an appeal is subsequently filed by Ms. Austin and such appeal is not successful, Ms. Austin will pay the reasonable fees and costs incurred in connection with such hearing or appeal within fourteen (14) days of disposition.

As an additional compensatory sanction, Ms. Austin shall pay Ms. Decloutte the sum of $220 as reimbursement for the bond premium that Ms. Decloutte was required to pay in order to post bail due to Ms. Austin's wrongful act in filing a false criminal complaint against Ms. Decloutte.

As an additional compensatory sanction, Ms. Austin shall pay Ms. Decloutte the sum of $240 as reimbursement for medical expenses incurred by Ms. Decloutte due to the stress and anxiety cause by Ms. Austin's wrongful act in filing a false criminal complaint against Ms. Decloutte.

---

[3]   Although not specifically pled, Ms. Decloutte proved a claim under 11 U.S.C. § 523(a)(6).  In the absence of any objection, the Court finds that the issue was tried by consent.  The Court can fathom no greater willful and malicious injury to a person than fraudulently depriving a human being of her liberty, even if only for a moment.

With respect to compensation for being wrongfully jailed, a person's liberty is the most fundamental right that we as a country defend above all else. To have that ideal eviscerated before one's child is almost unthinkable. While the Court agrees with Ms. Decloutte's analysis, the Court must implement some degree of moderation. This moderation does not suggest that Ms. Decloutte's liberty is any more or less important than that of any other citizen. Rather, the Court must set a number based on the circumstances of the case. Accordingly and as an additional compensatory sanction, Ms. Austin shall pay to Ms. Decloutte the sum of $15,000. This amount shall cover all damages for (i) wrongful confinement; (ii) lost earnings; (iii) time value of money; (iv) mental anguish and (v) similar claims. All sanctions shall be paid within fourteen (14) days of the entry date of this opinion and accompanying judgment.

Under 11 U.S.C. § 362(k), a Court may award punitive damages in appropriate circumstances. The Court has never seen a set of facts as egregious as those present in this case. The Court believes that an award of punitive damages is appropriate in this case and awards Ms. Decloutte the sum of $12,500 in punitive damages to be paid by Ms. Austin within fourteen (14) days of the entry date of this opinion and accompanying judgment.

The sanctions awarded hereunder are a compensatory federal sanction and may be enforced as such.

During trial, Ms. Austin asserted that she was entitled to a credit of $2,675 against any monies that she owes to Ms. Decloutte. The Court disagrees. To the extent that any such right exists, it belongs either to Ms. Austin's chapter 7 trustee or to a third party. Even if such a claim exists and such claim belongs to Ms. Austin, the Court finds no record in Ms. Decloutte's chapter 13 case that such a claim has been filed.

## Pattern of Improper Behavior

During the trial, Ms. Decloutte elicited testimony from Ms. Austin that reflects a pattern of behavior by Ms. Austin in violation of the Bankruptcy Code. Specific examples include the nondisclosure of fees in Case Nos. 11-40836 and 12-31128, *In re Steven Dornak* and Case No. 10-40209, *In re Rhone*. The forgoing cases are assigned to the undersigned judge and will be dealt with separately. The Court has little confidence, however, that this is the full extent of the problem. Accordingly, in the interest of justice, a copy of this opinion and the associated judgment will be provided to all bankruptcy judges in the Southern District of Texas for further review and action as they deem appropriate in their own cases.

## Charges of Misconduct Warranting Discipline

Pursuant to Rule 5 of the Rules of Discipline of the United States District Court for the Southern District of Texas, charges that an attorney has engaged in conduct shall be brought to the attention of the District Court by a writing addressed to the Chief Judge with a copy to the Clerk of the Court. The Clerk is directed to deliver a copy of this opinion and the related judgment to Chief Judge Lee Rosenthal for further proceeding in accordance with Rule 5. In so doing, the Court notes that due to the sheer volume of cases and the issues involved, the

bankruptcy process in the Southern District of Texas is heavily dependent upon the honesty and integrity of the lawyers that participate in the process. The District is blessed with many fine practitioners that take their duties seriously. Ms. Austin's conduct cannot be allowed to taint the efforts of so many. Therefore, this referral is made with the recommendation that Ms. Austin be disbarred from practice before the courts of the Southern District of Texas.

### Referral to the State Bar of Texas

Ms. Austin is a licensed Texas attorney. Inasmuch as the conduct set forth above involved actions taken in both Texas state courts and the United States Bankruptcy Court, the Court refers this matter to the Office of Chief Disciplinary Counsel for the State Bar of Texas with a recommendation for disbarment or other action as is appropriate.

The Clerk shall deliver a copy of this opinion and the associated judgment to the Office of Chief Disciplinary Counsel for the State of Texas.

### Referral to the United States Attorney

Under 18 U.S.C. § 3057(a), the Court, having reasonable grounds for a belief that a violation under chapter 9 of Title 18 or other laws of the United States related to debtors occurred, has an obligation to report such matter to the United States Attorney. As set forth herein, the Court believes that multiple violations of the law have occurred and refers this matter to the United States Attorney for investigation and prosecution as may be appropriate.

The Clerk shall deliver a copy of this opinion and the associated judgment to the current serving United States Attorney.

### Show Cause Hearing

The Court will hold a show cause hearing on **August 21, 2018 at 2:00 p.m. (prevailing Central Time)** in Courtroom 400, United States Courthouse, 515 Rusk Street, Houston, Texas. Ms. Austin shall personally appear at the schedule hearing to show cause why she should not be barred from appearing before the undersigned judge for a minimum period of five years. Ms. Austin may avoid this hearing by filing a verified pleading no later than August 17, 2018 stating that she does not oppose the relief. The United States Trustee is requested to attend the scheduled hearing.

All other relief is denied. A judgment consistent with this opinion will issue.

**SIGNED: June 20, 2018.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**